UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONG. CASA GRANDE,<br><br>               Plaintiff,<br><br><br>      - against-<br><br><br>JOSEPH LEFKOWITZ, JNL ARIZONA<br>PROPERTIES LLC,   and PURE GREEN<br>WATER FILTER, INC.<br><br>             Defendants. | Case No.: 1:24-cv-07752-FB-VMS |
| JOSEPH LEFKOWITZ on behalf of himself and<br>on behalf of all others similarly situated,<br><br>        Counterclaim Plaintiff,<br><br>           v.<br><br>CONG. CASA GRANDE,<br><br>        Counterclaim Defendant, and<br><br> YEHOSHIA RUBIN, SHLOMTZI RUBIN and<br>PINAL COUNTY HOLDING LLC,<br><br>        Third-Party Defendants. | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
SECOND AMENDED COMPLAINT AND COUNTERCLAIMS AGAINST PLAINTIFF
AND THIRD PARTIES YEHOSHIA RUBIN, SHLOMTZI RUBIN and
PINAL COUNTY HOLDING LLC**

Defendants Joseph Lefkowitz, JNL Arizona Properties LLC, Pure Green Water Filter, Inc.

("Defendants"), by and through their attorneys, as and for its Answer and Affirmative Defenses to

1

the Second Amended Complaint of Plaintiff Cong. Casa Grande ("Plaintiff" or "Casa Grande"), and for Counterclaims and Third Party Claims, states as follows:

## INTRODUCTION

1. Denied.

2. Denied, other than admitting that that Lefkowitz over the building of a ritual bath in Casa Grande, and had access to a bank account in Plaintiff's name to pay for the expenses.

3. Denied.

4. Denied.

## PARTIES

5. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations contained in this Paragraph.

6. Admitted.

7. Admitted.

8. The first sentence of the Paragraph is admitted. The second sentence is denied.

## JURISDICTION AND VENUE

9. This Paragraph contains conclusions of law to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the domicile of Plaintiff.

10. This Paragraph contains conclusions of law to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a

belief as to the domicile of Plaintiff.  Defendants admit that  they are New York residents for diversity purposes.

11. This Paragraph contains conclusions of law to which no response is required. To the extent a response is required, admitted.

## **FACTUAL ALLEGATIONS**

12. Denied.

13. Denied, other than admitting that Lefkowitz was involved in the fundraising for, and construction of, the mikvah.

14. Denied, other than admitting that Lefkowitz had access to a bank account in the name of Plaintiff to pay for mikvah-related expenses.

15. Denied.

16. Denied.

17. Denied that Lefkowitz stole any funds.

18. Denied.

19. Denied that Lefkowitz stole any funds.

20. Denied.

21. Defendants lack knowledge or information sufficient to form a belief as to the allegations of this Paragraph.

22. Admitted that Lefkowitz was entitled to a percentage of the promote fee, otherwise denied.

23. Denied.

24. Defendants lack knowledge or information sufficient to form a belief as to the allegations of this Paragraph.

25. Denied that Lefkowitz was required to return any funds.

26. Denied that Lefkowitz was required to pay back any funds.

## COUNT I
## UNJUST ENRICHMENT

27. Defendants repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

28. Denied, other than admitting that Lefkowitz had access to a bank account in the name of Plaintiff to pay for mikvah-related expenses.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

Defendants deny that Plaintiff is entitled to receive any of the remedies or the relief Plaintiff requests as judgment damages, specifically as set forth and detailed of the "WHEREFORE" clause that follows the preceding paragraph of the Second Amended Complaint.

## COUNT II
## CONVERSION

33. Defendants repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

34. Denied.

35. Denied.

36. Denied.

Defendants deny that Plaintiff is entitled to receive any of the remedies or the relief Plaintiff requests as judgment damages, specifically as set forth and detailed of the "WHEREFORE" clause that follows the preceding paragraph of the Second Amended Complaint.

## COUNT III
## BREACH OF FIDUCIARY DUTY
### (Against Lefkowitz)

37. Defendants repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

38. Denied, other than admitting that Lefkowitz was involved in the fundraising for, and construction of, the mikvah.

39. Denied, other than admitting that Lefkowitz had access to a bank account in the name of Plaintiff to pay for mikvah-related expenses.

40. Denied.

41. Denied.

Defendants deny that Plaintiff is entitled to receive any of the remedies or the relief Plaintiff requests as judgment damages, specifically as set forth and detailed of the "WHEREFORE" clause that follows the preceding paragraph of the Second Amended Complaint.

**COUNT IV**
**CONSTRUCTIVE FRAUD**

42. Defendants repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

43. Denied, other than admitting that Lefkowitz was involved in the fundraising for, and construction of, the mikvah.

44. Denied, other than admitting that Lefkowitz had access to a bank account in the name of Plaintiff to pay for mikvah-related expenses.

45. Denied.

46. Defendants lack knowledge or information sufficient to form a belief as to the allegations of this Paragraph.

47. Denied.

48. Denied.

Defendants deny that Plaintiff is entitled to receive any of the remedies or the relief Plaintiff requests as judgment damages, specifically as set forth and detailed of the "WHEREFORE" clause that follows the preceding paragraph of the Second Amended Complaint.

**COUNT V**
**BREACH OF CONTRACT**

49. Defendants repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

50. Denied.

51. The first and third sentences of the Paragraph are denied. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations of this Paragraph.

52. Denied.

Defendants deny that Plaintiff is entitled to receive any of the remedies or the relief Plaintiff requests as judgment damages, specifically as set forth and detailed of the "WHEREFORE" clause that follows the preceding paragraph of the Second Amended Complaint.

## COUNT VI
## UNJUST ENRICHMENT

53.     Defendants repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

54.     Denied.

55.     Denied.

56.     Defendants lack knowledge or information sufficient to form a belief as to the first sentence of the Paragraph. The second sentence is denied.

57.     Denied.

Defendants deny that Plaintiff is entitled to receive any of the remedies or the relief Plaintiff requests as judgment damages, specifically as set forth and detailed of the "WHEREFORE" clause that follows the preceding paragraph of the Second Amended Complaint.

## COUNT VII
## MONEY HAD AND RECEIVED

58.     Defendants repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59.     Denied.

60.     The first and third sentences of the Paragraph are denied. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations of this Paragraph.

61.     Denied.

62.     Denied.

Defendants deny that Plaintiff is entitled to receive any of the remedies or the relief Plaintiff requests as judgment damages, specifically as set forth and detailed of the "WHEREFORE" clause that follows the preceding paragraph of the Second Amended Complaint.

**DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES TO PLAINTIFF'S CLAIMS**

Defendants hereby asserts the following affirmative and other defenses (collectively, "Defenses") without assuming any burden of production or proof that Defendants would not otherwise have under any applicable law, rule, or regulation, and expressly reserves the right to amend or further plead any other defenses applicable to any and all counts after a reasonable opportunity for discovery has been had in this action.

1.     Plaintiff has failed to state any claim against Defendants upon which any relief may be granted.

2.     Plaintiff lacks standing to assert these claims.

3.      The claims in the Second Amended Complaint are subject, in whole or in part, to arbitration.

4.      All actions taken by Defendants with regard to Plaintiff were taken in good faith.

5.      Plaintiff has failed to state facts sufficient to state a claim against Defendants because the injuries and damages allegedly sustained by Plaintiff were not the result of any acts, omissions or other unlawful conduct committed by either of the Defendants.

6.      Plaintiff's claims are barred by the doctrines of estoppel, laches, waiver, and/or avoidable consequences.

7.      All or some of the Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

8.      Plaintiff failed to mitigate damages.

9.      The Court lacks subject matter jurisdiction over Plaintiff's claims.

10.     Plaintiff's claims are barred by the doctrines of accord and satisfaction.

11.     Plaintiff's claims are barred, in whole or in part, by payment, set-off, and/or recoupment.

12.     Plaintiff's claims are barred by the doctrine of ratification.

13.     Plaintiff consented to and/or authorized the actions complained of in the Second Amended Complaint.

14.     Plaintiff's claims are barred by the doctrines of unclean hands and illegality based on Plaintiff's own improper conduct.

15.     Plaintiff's claims are barred by the doctrines of quasi-estoppel and equitable estoppel.

16.     Plaintiff materially breached any agreements with Defendants, thereby excusing Defendants' performance.

17.     Plaintiff's claims are barred by the Statute of Frauds.

18.     Plaintiff's claims fail for lack of consideration.

19.     Defendants reserve the right to assert additional affirmative defenses as may be revealed through discovery and further investigation.

WHEREFORE, having fully answered the allegations set forth in the Second Amended Complaint, Defendants respectfully requests that the Court (a) deny all of the remedies, relief and judgment damages requested by Plaintiff, (b) dismiss all of Plaintiff's claims in their entirety and with prejudice, (c) enter Judgment against Plaintiff and for Defendants, (d) award Defendants their reasonable attorneys' fees and costs of this proceeding, and (c) grant Defendants any and all such other and further relief that the Court deems just and proper.

## DEFENDANTS' COUNTERCLAIMS AND THIRD PARTY CLAIMS

### PARTIES

1.     Counterclaim Plaintiff Joseph Lefkowitz ("Lefkowitz") resides in Brooklyn, New York.

2.     Counterclaim Defendant Cong. Casa Grande is, on information and belief, an Arizona non-profit corporation.

3.     Counterclaim Defendant Yehoshia Rubin ("Rubin") is an individual residing at 2148 N Wildflower Lane, Casa Grande, Arizona 85122.

4.     Counterclaim Defendant Shlomtzi Rubin ("Mrs. Rubin") is an individual residing at 2148 N Wildflower Lane, Casa Grande, Arizona 85122, and is Rubin's wife.

5.      Counterclaim Defendant Pinal County Holding LLC is an Arizona LLC. Upon information and belief, Shlomtzi Rubin is the sole member of Pinal County Holdings LLC.

## FACTUAL BACKGROUND

### A.  The Mikvah Project

6.      In or about January 2019, Joseph Lefkowitz, who suffered from chronic and severe eczema since childhood, traveled with his son — who suffers from similar symptoms—to Tucson, Arizona to seek climate-based relief for their condition.

7.      In or around January 2020, Lefkowitz learned of the development of a Hassidic Jewish neighborhood in Casa Grande, Arizona. The ad included contact information for Yehoshia Rubin, whom Lefkowitz subsequently contacted to explore the possibility of temporarily relocating with his son to the area.

8.      During his visits, Lefkowitz began researching real estate development opportunities in Casa Grande to support the growth of a Hasidic community. Lefkowitz identified a 100-acre parcel of land with development potential for over 300 homes.

9.      Lefkowitz conducted zoning research and contacted the property owner directly. He ultimately presented the opportunity to Rubin, which led to the launch of a project named Red Diamond Development. Lefkowitz and Rubin agreed to form a 50/50 partnership under an entity called Diamond Elite Community LLC. Lefkowitz also facilitated a $5.5 million loan and secured a $300,000 investment for the project.

10.     As part of their efforts to develop a Jewish community in Casa Grande, Lefkowitz and Rubin planned to construct a ritual bath, called a mikvah. The ritual bath is used on a daily basis in Hasidic Jewish communities.

11.     Beginning in the winter of 2022, Lefkowitz and Rubin commenced extensive fundraising efforts for the construction of two ritual baths, including running peer-to-peer fundraising campaigns.

12.     The solicitation materials for the ritual baths emphasized that the ritual bath would be for the entire Jewish community of Casa Grande and surrounding communities.

13.     For example, a June 2023 fundraising letter sent by Rabbi Yechiel Steinmetz, a rabbi in Casa Grande, stated that "I call out to, our Jewish brethren, anywhere and everywhere . . . to establish a new, complete, and beautiful *mikvah* here in our city of Casa Grande, which shall serve as a source of honor and glory for the benefit and welfare of the Jewish people."

14.     An online fundraising campaign stated that this was "not just another Mikvah but a rare opportunity to take part in writing a new chapter in our history, helping establish a new [Hasidic] community in the Arizona Desert." The campaign also emphasized that the mikvah would not be used just by the Casa Grande Jewish community but by nearby Jewish communities as well, stating "Numerous Jewish families living in the surrounding areas have never gone to Mikvah yet, and now, with the completion of this Mikvah, many of them will start going to Mikvah for the first time in their lives!"

15.     Rubin's brother, Zev Rubin, opened a designated bank account under the name of Congregation Casa Grande to hold the mikvah-related funds. On the bank opening documents, Lefkowitz was designated as Vice President of the Congregation solely for purposes of facilitating the fundraising and paying mikvah-related expenses.

16.     In all, approximately $950,000 was raised from over 1,000 individual donors across the United States for the establishment of a communal *mikvah* in Casa Grande.  The majority of the donors were based in New York. Lefkowitz donated funds for the project as well.

12

17.    Recognizing that the larger mikvah project would take time to complete, Lefkowitz proposed constructing a smaller, interim mikvah behind the community synagogue located at 1645 E Silver Reef, Casa Grande, Arizona.

18.    The larger, permanent mikvah would be built at 913 East 8th Street, Casa Grande, Arizona.

19.    The larger mikvah at 913 East 8th Street remains under construction but is near completion. To date, the costs for both mikvahs have been covered entirely through donations.

20.    On January 14, 2021, the 1645 E Silver Reef property was transferred by warranty deed from Kehal Chasidim C[asa] G[rande] 1 LLC to Pinal County Holdings LLC.

21.    On September 20, 2021, the 913 East 8th Street property was transferred to Pinal County Holdings LLC.

22.    However, Pinal County Holdings was not an entity owned by the Casa Grande Jewish community. It is a private LLC owned by Shlomtzi Rubin, the wife of Yehoshia Rubin.

23.    When Lefkowitz discovered that the mikvahs were being built on private land owned by a LLC owned by Rubin's wife, he confronted Rubin. Rubin assured him that the mikvahs would be owned and managed by a nonprofit congregation and serve the community at large. This newly incorporated entity would include all of the Orthodox Jews of Casa Grande as members, and they would have the right to vote for their own board.

24.    Rubin further promised to transfer or subdivide the mikvah portion of the property to a new nonprofit entity once it was established.

25.    Throughout 2024, Rubin attempted to cement his control over the Casa Grande Hasidic community.  He claimed that these Jewish communal institutions in Casa Grande – funded

by donations from across the United States – were in fact his private enterprises, which he could control as he saw fit.

26.    Rubin controlled access to these institutions, including the mikvah, in order to punish community members who competed with the real estate business he was running in Casa Grande.

27.    For example, on August 12, 2024, Rubin called the police to forcefully evict from the synagogue during services Anshel Perl, who was his competitor in vacation property rentals.

28.    The following day, Rubin denied entry to the mikvah to a tenant of Perl's, Mr. Silberstein.

29.    In a written notice, Rubin informed Perl that he and his tenants were barred from the mikvah, synagogue, religious schools and kosher grocery store because Perl engaged in the following acts:

- Perl outbid someone else on a house in Casa Grande, by offering $30,000 over the prior bidder.

- Perl had allegedly agreed to only rent the property he bought to gentiles, but then rented it to Jews as well.  Rubin was upset by this because he sought to maintain a monopoly over rentals to Jewish residents in Casa Grande.

- Perl had agreed to allow Rubin's company, Arizona Kosher Resorts, to manage his vacation rentals, but then terminated the relationship after Rubin's company did a substandard job.

Rubin made clear that "whoever rents [Perl's vacation rentals] will not be allowed to enter the synagogues, mikvahs, institutions and grocery stores."

30.    Lefkowitz and the community rabbi both contacted Rubin to object to his hostile takeover of Jewish communal institutions that were funded by public donations. Rubin responded with hostility and threatened Lefkowitz, stating words to the effect of, "I haven't even begun using my bullets—you'll see what I can do."

31.    On August 18, 2024, Rubin sent Lefkowitz an email stating:

I'm restraining you and your wife or children . . . from coming on. or visiting any of my properties. . . So from now on I'm not allowing you to come on. or show up or send people in your name to step on my properties on the following address below. . . . With no choice, I will have to call cops on you for violating trespassing, sometimes this can lead to jail time, and my ruv told me I should even press charges on you to get you arrested. So please don't make me do that. The addresses are: 913 e 8th st casa Grande AZ, 1645 e silver reef Dr Casa Grande AZ

32.    These properties that Rubin claimed to own included the two mikvah properties that were funded by donations from Jewish communities across the United States.

33.    In the following days, Rubin escalated his campaign by barring multiple members of the Casa Grande Jewish community from using the Jewish communal institutions under his control, including the mikvah sites.

34.    On August 18, 2024, Rubin sent an email to M.L. and E.L.[1] barring them from the mikvah, synagogue, kosher grocery store and other communal institutions. Rubin attached the same notice that he had previously sent to Perl.

35.     Comparable emails were sent to H.L.,S.S.,  M.B. and others.

36.    Rubin's rationale for barring these individuals from the mikvah and other communal institutions is that they were setting up or abetting competing businesses to his real estate and vacation rental business.

---

[1] Due to privacy concerns, the public filing of these counterclaims only lists the initials of these individuals.

37.     On December 17, 2024, Rubin sent a warning letter to M.K., an individual who had purchased properties in Casa Grande to rent out as vacation rentals.  He told M.K. that he was "sorry" that M.K. had lost money on his rental property that was being managed by Arizona Kosher Resorts, which was Rubin's company.

38.     However, Rubin reminded M.K. that if he wanted to sell the property, he would need to (a) only sell the property to a Jew, not a gentile, (b) use an appraiser authorized by Rubin to sell the property, and (c) sell the property at the price set by Rubin's appraiser.   Rubin warned M.K. that if he failed to abide by these demands, he would be excluded from Casa Grande's Jewish communal institutions, including the mikvah.

39.     To this day, the both mikvahs are still in the name of Pinal County Holdings LLC, an entity owned by Rubin's wife.

B. **The Red Diamond Development Project**

40.     As discussed above, in May 2021, Rubin and Lefkowitz partnered to develop a project named Red Diamond Development in Casa Grande.

41.     The development project was operated by Diamond Elite Community LLC ("Diamond Elite"), of which Lefkowitz and Rubin were 50/50 partners.

42.     The purpose of Diamond Elite was to "acquire, own, develop, improve, maintain, operate, manage, lease, mortgage, encumber, sell and otherwise deal with the improved real property located in Pinal County, Arizona identified as Parcel Numbers 505-01-704, 505-01-705, and 505-01-687."

43.     Rubin raised almost $10 million from investors for this development project. Lefkowitz raised approximately $300,000. These investors invested through five separate LLCs named Diamond Elite Community Investors A through E.

16

44.     Lefkowitz also facilitated a $5.5 million loan from Okoa Capital LLC to purchase the land for the project.

45.     In the operating agreements that Rubin sent investors, Rubin stated that Plaintiff (i.e., Cong. Casa Grande) would serve "as the broker for the sale of Homes in consideration of a market-rate brokerage commission" and that Cong. Casa Grande would be paid a $568,545 fee.

46.     The land was purchased for $9,475,740.

47.     Rubin was the manager of Diamond Elite.

48.     Rubin managed multiple real estate projects under the name Diamond Elite Ventures.

49.     He mismanaged this Diamond Elite project, and comingled the funds of this project with other Diamond Elite Ventures development projects, including Diamond Elite Park LLC, which managed a project named Park@25th.

50.     Rubin also used investor funds to pay for personal expenses, the expenses of Cong. Casa Grande, and for the expenses of other projects.

51.     In March 2023, the loan from Okoa Capital came due.

52.     Rubin paid an additional fee to extend the loan to April 17, 2023.

53.     Rubin failed to refinance the loan, and Okoa seized the development property, which was collateral for the loan, and sold the property.

54.     As a result of Rubin's mismanagement, all of the investors and Lefkowitz lost the equity in their investment.

55.     Diamond Elite is only one of many development projects managed by Rubin that have failed.

56. On July 9, 2023, Diamond Elite Park LLC, an entity managed by Rubin, filed for Chapter 11 bankruptcy in the Southern District of New York. The bankruptcy arose from a failed $9.7 million development project named Park@25th . The purposes of the project was to convert a commercial property in Phoenix, Arizona to residential properties  In December 2024, the Bankruptcy Trustee in the case filed a motion to convert the matter to a Chapter 7 bankruptcy, after Rubin failed to maintain the property which was the sole asset of the bankruptcy estate.

57. On February 3, 2025, Diamond Elite 6516 LLC, an entity managed by Rubin, filed for Chapter 11 bankruptcy in the District of Arizona   This bankruptcy arose from a failed $3.2 million real estate venture in Phoenix, Arizona.

58. On June 11, 2025, Diamond Elite 121 LLC, an entity managed by Rubin, filed for Chapter 11 bankruptcy in the District of Arizona  This bankruptcy arose from a failed real estate venture in Casa Grande, Arizona.

59. Lefkowitz asked Rubin for an accounting for Diamond Elite, but Rubin refused. An accounting is particularly necessary because the amounts raised from investors, $10 million, should have been more than sufficient to cover the $5.5 million loan from Okoa.

**Class Allegations**

60. Lefkowitz brings these claims on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) and/or (b)(3).

61. The proposed class is defined as: "All individuals and entities who donated money between 2021 and the present in response to solicitations for the construction of ritual baths (mikvahs) in Casa Grande, Arizona, which mikvahs were intended to serve the Jewish community of Casa Grande" (the "Donor Class").

62.     Excluded from the Class are: (a) the Counterclaim Defendants, and their officers, directors, agents, servants, employees, attorneys, and immediate family members; (b) any entity in which any Counterclaim Defendant has a controlling interest; and (c) the Court and its immediate family and staff.

63.     The Class is so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of over 1,000 individual donors from across the United States who contributed funds in response to Counterclaim Defendants' solicitations.

64.     There are questions of law and fact common to the Class, including but not limited to:

- Whether Counterclaim Defendants' solicitation materials constituted misrepresentations about the intended use and ownership of the mikvahs;

- Whether Counterclaim Defendants converted the Donor Class's donations by misappropriating the mikvahs for use as private amenities to benefit the Counterclaim Defendants' commercial real estate and vacation rental business;

- Whether Counterclaim Defendants breached their fiduciary duties to donors by converting donated funds intended for community use to private benefit;

- Whether Counterclaim Defendants' conduct constitutes breach of trust, and/or unjust enrichment;

- Whether Class members are entitled to restitution, disgorgement, and/or other equitable relief.

65.     Lefkowitz's claims are typical of the claims of the Class. Plaintiff, like all Class members, donated funds in reliance on Counterclaim Defendants' representations that the mikvahs

would serve the entire Jewish community of Casa Grande and surrounding areas, not function as private amenities controlled by Counterclaim Defendants for their commercial benefit.

66.    Counterclaim Plaintiff will fairly and adequately protect the interests of the Class.

67.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

- Individual litigation would be impracticable given the relatively small amount of individual donations compared to the cost of litigation;

- The common questions of law and fact predominate over individual issues;

- Class treatment will promote judicial economy and prevent inconsistent judgments;

- Class members' interests in pursuing individual actions are limited given the costs involved.

68.    Alternatively, the Class is maintainable under Rule 23(b)(2) because Counterclaim Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

69.    Notice to the Class can be effectively accomplished through publication in Jewish community publications, online platforms used for the original fundraising campaigns, and other methods reasonably calculated to reach Class members.

## CAUSES OF ACTION

### Count I -  Violation of N.Y. General Business Law § 349
### (On Behalf of Donor Class)

70.    Counterclaim Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71.     At all times relevant herein, Counterclaim Defendants were engaged in consumer oriented conduct by soliciting charitable donations in New York for the community mikvah of Casa Grande, Arizona.

72.     Counterclaim Defendants' fundraising efforts were directed broadly to consumers through peer-to-peer fundraising campaigns, online platforms, fundraising letters, and other marketing materials.

73.     The Counterclaim Defendants fundraising materials that were distributed to the public contained materially misleading representations that the donations would be used to build mikvahs "for the entire Jewish community of Casa Grande and surrounding communities" and that the mikvahs would serve "nearby Jewish communities" and enable "Jewish families living in the surrounding areas" to use the facilities.

74.     These representations were materially misleading because, contrary to the solicitation materials, the Counterclaim Defendants maintain private control over the mikvahs and use them to further their commercial real estate and vacation rental business interests.

75.     Moreover, the mikvah properties are held by Pinal County Holdings LLC, an entity owned by Defendant Shlomtzi Rubin.

76.     The Counterclaim Defendants have limited access to the mikvahs funded by the public donations to those individuals that use Counterclaim Defendants' property management business to manage their vacation rentals or real estate sales.  The Counterclaim Defendants have specifically barred from the mikvah anyone who uses a different property manager, or does not pay the Counterclaim Defendants a commission on their real estate transactions.

77.    A reasonable consumer would be deceived by the Counterclaim Defendants' representations and would not expect that donations solicited for a "communal mikvah" would result in privately-controlled facilities used to further the operators' commercial interests.

78.    As a direct and proximate result of Defendants' deceptive acts and practices, Counterclaim Plaintiff and the Class members suffered injury in the form of economic loss equal to the amount of their donations, which were not used for the purpose represented and deprivation of the benefit of their bargain, as they did not receive the communal religious facilities they were promised.

79.    By reason of the foregoing, Counterclaim Plaintiff and the Donor Class is entitled to judgment against the Counterclaim Defendants in an amount to be determined at trial, together with statutory damages of treble damages of up to $1,000 per class member, pre and post-judgment interest, costs, and attorneys' fees.

## COUNT II: UNJUST ENRICHMENT
### (On Behalf of Donor Class)

80.    Counterclaim Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

81.    Counterclaim Defendants have been enriched through their receipt and use of charitable donations totaling over $950,000 that were donated for the construction of mikvahs in Casa Grande, Arizona to be used by the Jewish community of Casa Grande and surrounding areas.

82.    Counterclaim Defendants were enriched because they use these facilities funded by public donations as private amenities for their real estate businesses.

83.    Counterclaim Defendants have been enriched by leveraging control over the donor-funded mikvahs to eliminate business competition, excluding competitors and their customers

from the facilities as a means of maintaining their monopoly over rental properties for Jewish residents in Casa Grande.

84.     Counterclaim Defendants have been enriched by the enhanced value and marketability of their real estate properties due to the proximity and availability of the donor-funded religious facilities.

85.     Counterclaim Defendants' enrichment came directly at the expense of Counterclaim Plaintiff and the Class members, who donated funds for a communal mikvah.

86.     The circumstances surrounding Counterclaim Defendants' enrichment make it inequitable for them to retain the benefits of the donations without compensating the Counterclaim Plaintiff and the Class, because the donations provided by the Counterclaim Plaintiff and the Class were intended to benefit the entire Jewish community of Casa Grande and surrounding areas, but instead have been appropriated by Defendants for their exclusive control and commercial benefit.

87.     By reason of the foregoing, Counterclaim Plaintiff and the Donor Class is entitled to judgment against the Counterclaim Defendants in an amount to be determined at trial, but not less than $950,000 pre and post-judgment interest, costs, and attorneys' fees.

### COUNT III: CONVERSION
### (On Behalf of Donor Class)

88.     Counterclaim Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

89.      Counterclaim Plaintiff and the Class members had a possessory right that their donated funds would be used to construct mikvahs for the entire Jewish community of Casa Grande and surrounding areas.

90.     Counterclaim Defendants exercised unauthorized dominion and control over the donated funds by using the mikvahs paid with the donated funds as private facilities to benefit their

commercial real estate and vacation rental businesses, rather than as communal religious facilities as promised to donors.

91.     As a direct and proximate result of Counterclaim Defendants' conversion, Counterclaim Plaintiff and the Class members have been damaged in that their donated funds were not used for the communal religious purposes promised, but instead were converted to benefit Counterclaim Defendants' private commercial enterprises.

92.     By reason of the foregoing, Counterclaim Plaintiff and the Donor Class is entitled to judgment against the Counterclaim Defendants in an amount to be determined at trial, but not less than $950,000 pre and post-judgment interest, costs, and attorneys' fees.

### COUNT IV: BREACH OF CONTRACT / CHARITABLE SUBSCRIPTION
(On Behalf of Donor Class)

93.     Counterclaim Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

94.     Counterclaim Defendants' solicitation materials constituted offers to create mikvahs for the entire Jewish community of Casa Grande and surrounding areas in exchange for charitable donations from the public.

95.     The solicitation materials created binding charitable subscription agreements between Counterclaim Defendants and each donor, whereby donors agreed to provide monetary contributions in exchange for Counterclaim Defendants' promise to use such funds to construct and maintain communal mikvahs serving the broader Jewish community.

96.     Counterclaim Defendants materially breached the charitable subscription agreements by operating the mikvahs as private amenities to benefit their commercial real estate and vacation rental businesses rather than as communal religious facilities; restricting access to the mikvahs based on whether individuals use Counterclaim Defendants' commercial services or pay

them commissions, rather than making them available to the entire Jewish community as promised; and using the mikvahs as instruments of commercial control to eliminate business competition rather than for the communal religious purposes represented in the solicitation materials.

97.     Counterclaim Defendants' breaches were material because they frustrated the essential purpose of the charitable subscription agreements, which was to create communal religious facilities for the broader Jewish community.

98.     As a direct and proximate result of Counterclaim Defendants' material breaches, Counterclaim Plaintiff and the Class members have suffered damages including the loss of their donated funds and the deprivation of the communal religious facilities they were promised.

99.     By reason of the foregoing, Counterclaim Plaintiff and the Donor Class is entitled to judgment against the Counterclaim Defendants in an amount to be determined at trial, but not less than $950,000 together with pre and post-judgment interest, costs, and attorneys' fees.

## COUNT V: CONSTRUCTIVE TRUST
(On Behalf of Donor Class)

100.     Counterclaim Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

101.     Counterclaim Defendants solicited charitable donations from the Donor Class by representing that the funds would be used to construct mikvahs "for the entire Jewish community of Casa Grande and surrounding communities" and that the mikvahs would serve as communal religious facilities for "the benefit and welfare of the Jewish people."

102.     These solicitation materials created a confidential and fiduciary relationship between Counterclaim Defendants and the Donor Class, whereby Counterclaim Defendants were entrusted with donated funds for the specific charitable purpose of creating communal religious facilities.

103.     The Donor Class transferred over $950,000 to Counterclaim Defendants in justifiable reliance on these promises and representations that their donations would create communal religious facilities.

104.     Counterclaim Defendants have been unjustly enriched by using the donated funds to construct mikvahs that they now control as private facilities to benefit their commercial real estate and vacation rental businesses and by using the donor-funded mikvahs to eliminate business competition and maintain a monopoly over rental properties for Jewish residents in Casa Grande.

105.     Counterclaim Defendants breached their fiduciary duties to the Donor Class through this conduct.

106.     It would be inequitable and unconscionable to allow Counterclaim Defendants to retain ownership and control of the mikvahs that were constructed entirely with funds donated by the Donor Class for communal purposes.

107.     The mikvahs located at 913 East 8th Street and 1645 E Silver Reef Drive, Casa Grande, Arizona, should be held in constructive trust for the benefit of the Donor Class and the broader Jewish community of Casa Grande and surrounding areas, as originally promised in the solicitation materials.

108.     The Donor Class has no adequate remedy at law, as monetary damages cannot restore the communal nature of the religious facilities that the donors intended to create and cannot ensure that the facilities will serve their intended charitable purpose.

109.     By reason of the foregoing, Counterclaim Plaintiff and the Donor Class respectfully requests that the Court (i) impose a constructive trust over the mikvah properties located at 913 East 8th Street and 1645 E Silver Reef Drive, Casa Grande, Arizona, for the benefit of the Donor Class and the Jewish community of Casa Grande and surrounding areas; (ii) order Counterclaim

Defendants to transfer ownership of the mikvahs to a legitimate nonprofit community organization that will operate the facilities for their intended communal religious purposes; (iii) enjoin Counterclaim Defendants from restricting access to the mikvahs based on commercial considerations and require that the facilities be made available to the entire Jewish community as originally promised,  (iv) award the Donor Class their reasonable attorneys' fees and costs; and grant such other and further relief as this Court deems just and proper.

### Count VI -  Violation of A.R.S. § 44-1522
### (On Behalf of Donor Class)

110.    Counterclaim Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

111.    At all times relevant herein, Counterclaim Defendants were engaged in consumer oriented conduct by soliciting charitable donations for the community mikvah of Casa Grande, Arizona.

112.    Counterclaim Defendants' fundraising efforts were directed broadly to consumers through peer-to-peer fundraising campaigns, online platforms, fundraising letters, and other marketing materials.

113.    The Counterclaim Defendants fundraising materials that were distributed to the public contained materially misleading representations that the donations would be used to build mikvahs "for the entire Jewish community of Casa Grande and surrounding communities" and that the mikvahs would serve "nearby Jewish communities" and enable "Jewish families living in the surrounding areas" to use the facilities.

114.   These representations were materially misleading because, contrary to the solicitation materials, the Counterclaim Defendants maintain private control over the mikvahs and use them to further their commercial real estate and vacation rental business interests.

115.   Moreover, the mikvah properties are held by Pinal County Holdings LLC, an entity owned by Defendant Shlomtzi Rubin.

116.   The Counterclaim Defendants have limited access to the mikvahs funded by the public donations to those individuals that use Counterclaim Defendants' property management business to manage their vacation rentals or real estate sales.  The Counterclaim Defendants have specifically barred from the mikvah anyone who uses a different property manager, or does not pay the Counterclaim Defendants a commission on their real estate transactions.

117.   A reasonable consumer would be deceived by the Counterclaim Defendants' representations and would not expect that donations solicited for a "communal mikvah" would result in privately-controlled facilities used to further the operators' commercial interests.

118.   As a direct and proximate result of Defendants' deceptive acts and practices, Counterclaim Plaintiff and the Class members suffered injury in the form of economic loss equal to the amount of their donations, which were not used for the purpose represented and deprivation of the benefit of their bargain, as they did not receive the communal religious facilities they were promised.

119.   By reason of the foregoing, Counterclaim Plaintiff and the Donor Class is entitled to judgment against the Counterclaim Defendants in an amount to be determined at trial, together with punitive damages, pre and post-judgment interest, costs, and attorneys' fees.

## COUNT VII: BREACH OF FIDUCIARY DUTY
### (On Behalf of Donor Class)

120.    Counterclaim Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

121.    Counterclaim Defendants' solicitation and acceptance of charitable donations to build a community mikvah in Casa Grande, Arizona created a fiduciary relationship between Counterclaim Defendants and the Donor Class.

122.    Counterclaim Defendants materially breached their fiduciary duties to the Donor Class by converting the donor-funded mikvahs from communal religious facilities into private amenities controlled by Counterclaim Defendants for their commercial real estate and vacation rental businesses; using the mikvahs as instruments of commercial control to eliminate business competition and maintain a monopoly over rental properties for Jewish residents in Casa Grande; and barring multiple members of the Casa Grande Jewish community from using the donor-funded facilities, including individuals who had contributed to the mikvah construction, solely to advance Counterclaim Defendants' commercial interests.

123.    As a direct and proximate result of Counterclaim Defendants' breaches of fiduciary duty, Counterclaim Plaintiff and the Class members have suffered substantial damages, including the loss of their charitable donations, which were not used for the communal religious purposes promised and the deprivation of the communal religious facilities they were promised and intended to create.

124.    By reason of the foregoing, Counterclaim Plaintiff and the Donor Class is entitled to judgment against the Counterclaim Defendants in an amount to be determined at trial, together with punitive damages, pre and post-judgment interest, costs, and attorneys' fees.

## COUNT VIII: BREACH OF FIDUCIARY DUTY
### (Lefkowitz v. Rubin)

125.    Counterclaim Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.    In May 2021, Rubin and Lefkowitz entered into a partnership to develop a project named Red Diamond Development in Casa Grande, operated through Diamond Elite Community LLC, of which Lefkowitz and Rubin were 50/50 partners.

127.    As manager of Diamond Elite and as Lefkowitz's partner in the venture, Rubin owed fiduciary duties to Lefkowitz, including duties of loyalty, care, good faith, and fair dealing.

128.    Rubin materially breached his fiduciary duties to Lefkowitz by mismanaging the Diamond Elite project and commingling Diamond Elite funds with other development projects that he was managing in Arizona, including Diamond Elite Park LLC and by using investor funds to pay for personal expenses and expenses of other unrelated projects.

129.    As a direct and proximate result of Rubin's breaches of fiduciary duty, Lefkowitz has suffered substantial damages, including the loss of his equity investment in Diamond Elite and his proportionate share of the partnership's assets.

130.    By reason of the foregoing, Lefkowitz is entitled to judgment against Rubin for damages in an amount to be determined at trial, together with pre and post-judgment interest, costs, and attorneys' fees.

## COUNT IX: ACCOUNTING
### (Lefkowitz v. Rubin)

131.    Counterclaim Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

132.    Lefkowitz and Rubin were partners in Diamond Elite Community LLC, with Lefkowitz owning a 50% interest in the partnership.

133.    As a partner in Diamond Elite, Lefkowitz has the right to a full and complete accounting of all partnership assets, liabilities, income, expenses, and transactions.

134.    Rubin, as manager of Diamond Elite, had custody and control of the partnership's books, records, and financial accounts.

135.    Despite repeated requests, Rubin has refused to provide Lefkowitz with an accounting of Diamond Elite's financial affairs.

136.    An accounting is particularly necessary and appropriate under the circumstances because Rubin raised approximately $10 million from investors for the Diamond Elite project and the loan from Okoa Capital was only $5.5 million, suggesting that sufficient funds should have been available to refinance or pay off the loan.

137.    Moreover, Rubin commingled Diamond Elite funds with other projects under his management and used investor funds for personal expenses and expenses of other unrelated projects.

138.    The partnership lost its primary asset through foreclosure despite having raised substantially more capital than the amount of the defaulted loan.

139.    The complex financial transactions and Rubin's refusal to provide information make it impossible for Lefkowitz to determine the true financial condition of the partnership and the disposition of partnership assets without a court-ordered accounting.

140.    Lefkowitz has no adequate remedy at law, as only a complete accounting can reveal the true extent of Rubin's mismanagement and misappropriation of partnership funds.

141.    By reason of the foregoing, Lefkowitz respectfully requests that this Court order Rubin to provide a full and complete accounting of all Diamond Elite Community LLC assets, liabilities, income, expenses, and transactions from the inception of the partnership through the present, order Rubin to produce all books, records, bank statements, and other financial documents relating to Diamond Elite Community LLC, and award Lefkowitz his costs and reasonable attorneys' fees incurred in obtaining the accounting.

**WHEREFORE**, Counterclaim Plaintiff Joseph Lefkowitz, individually and on behalf of the Donor Class, respectfully requests that this Court enter judgment in his favor and against Counterclaim Defendants and grant the following relief:

a.  Certifying the Donor Class and their claims, as set forth in this Complaint, for class

b.  treatment;

c.  Appointing Lefkowitz as Class Representative for the Donor Class;

d.  Designating Bruck LLP as Class Counsel;

e.  **On the Donor Class Claims (Counts I-VII)**: Compensatory damages in an amount to be determined at trial, but not less than $950,000 representing the total charitable donations misappropriated by Counterclaim Defendants;

f.  **On Count I (N.Y. General Business Law § 349)**: Statutory damages of treble damages of up to $1,000 per class member, or such other amount as permitted by law;

g.  **On Counts VI and VII (Arizona Consumer Fraud Act and Breach of Fiduciary Duty)**: Punitive damages in an amount to be determined by the Court for Counterclaim Defendants' willful, wanton, and reckless conduct;

h.  **On Count VIII (Breach of Fiduciary Duty - Lefkowitz v. Rubin)**: Compensatory damages for Lefkowitz's losses resulting from Rubin's breach of fiduciary duty;

i.  **Constructive Trust**: An order imposing a constructive trust over the mikvah properties located at 913 East 8th Street and 1645 E Silver Reef Drive, Casa Grande, Arizona, for the benefit of the Donor Class and the Jewish community of Casa Grande and surrounding areas;

j.  **Transfer of Ownership**: An order requiring Counterclaim Defendants to transfer ownership of the mikvahs to a legitimate nonprofit community organization that will operate the facilities for their intended communal religious purposes;

k.  **Injunctive Relief**: A permanent injunction:

   a.  Enjoining Counterclaim Defendants from restricting access to the mikvahs based on commercial considerations;

   b.  Prohibiting Counterclaim Defendants from using the donor-funded mikvahs for private commercial purposes or as instruments of business competition;

l.  **Disgorgement**: An order requiring Counterclaim Defendants to disgorge all profits, benefits, and unjust enrichment obtained through their wrongful conduct;

m.  **Accounting**: An order requiring Rubin to provide a full and complete accounting of all Diamond Elite Community LLC assets, liabilities, income, expenses, and transactions from the inception of the partnership through the present;

n.  **Interest**: Pre-judgment and post-judgment interest on all monetary awards at the highest rate permitted by law;

o.  **Attorneys' Fees and Costs**: An award of reasonable attorneys' fees and costs incurred in prosecuting these counterclaims, including fees and costs for obtaining the accounting relief;

p. **Further Relief**: Such other and further relief as this Court deems just, proper, and equitable under the circumstances.

Dated: Brooklyn, New York
       July 11, 2025

                                      Respectfully submitted,
                                      BRUCK LLP

By: *Yair M. Bruck*
          Yair M. Bruck, Esq.

          1207 East 34th Street
          Brooklyn, New York 11210
          (212) 593-9090 (telephone)
          (212) 644-6667 (facsimile)
          YB@BruckLLP.com (e-mail)

*Attorneys for Defendants/Counterclaim Plaintiff*
*Joseph Lefkowitz and JNL Arizona Properties LLC*